IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RHONDA S. POWELL, | ) | Case No. 3:17-cv-1795 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | <u>REPORT AND RECOMMENDATION</u> |
| Defendant. | ) | |

**I.**   **Introduction**

Plaintiff, Rhonda S. Powell, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act").  This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

Because substantial evidence supports the ALJ's decision and Powell has failed to identify any error of law in the ALJ's evaluation of her claim, I recommend that the final decision of the Commissioner be AFFIRMED.

**II.**   **Procedural History**

Rhonda Powell applied for supplemental security income on August 25, 2014.[1]  (Tr. 186)  She alleged a disability onset date of December 31, 2011.  (Tr. 186)  Her application was denied initially on November 12, 2014 (Tr. 149) and after reconsideration on February 2, 2015.  (Tr.

---

[1] Powell previously filed applications for disability insurance benefits and supplemental security income on July 30, 2012, but these claims were denied on May 19, 2014.  (Tr. 102-113)

157)  Powell requested an administrative hearing (Tr. 162), and Administrative Law Judge ("ALJ") Amy Budney heard the case on February 29, 2016.  (Tr. 67-98)  The ALJ found that Powell was not disabled in a March 25, 2016 decision.  (Tr. 11-24)  Powell requested review of the hearing decision on May 23, 2016.  (Tr. 184)  On June 29, 2017, the Appeals Council denied review, rendering the ALJ's conclusion the final decision of the Commissioner.  (Tr. 1-6)  On June 26, 2017 Powell filed suit to challenge the Commissioner's final decision.  ECF Doc. 1.

### III.    Evidence

#### A.    Personal, Educational and Vocational Evidence

Rhonda Powell was born on March 24, 1962 and was 52 years old when she applied for disability benefits.  (Tr. 186)  She has a high school education and completed one year of college.  (Tr. 72)  She has previous work experience as a seamstress, laborer, and sales clerk.  (Tr. 225)

#### B.    Relevant Medical Evidence – Physical Impairments

Powell has a history of foot problems including bunionectomies – on her right foot in December 2010 and on her left foot in January 2014.  (Tr. 668-671, 692-694)  On May 4, 2014, she went to the emergency room complaining of left foot pain after she accidentally hit her foot on the bathtub three days earlier.  (Tr. 492-497)  X-rays showed postsurgical changes but no fractures or dislocations.  (Tr. 495)  Powell was diagnosed with a contusion.  (Tr. 495)

Powell met with podiatrist, Corey B. Russell, D.P.M., on August 19, 2014.  She complained of pain around the second metatarsal phalangeal joint of her left foot.  Dr. Russell reviewed left foot x-rays and noted mild increase in the soft tissue contour, a healed fracture of the third metatarsal with an external bone callus, and excellent alignment of the first metatarsal phalangeal joint ("MPJ").  He diagnosed capsulitis of the second metatarsal phalangeal joint and edema.  He gave Powell a short air walker and recommended rest, ice, and elevation.  (Tr. 663)

When Powell saw Dr. Russell on October 7, 2014, she had progressed from the air walker to flip-flops but she could not wear closed toe shoes.  (Tr. 770)  On October 28, 2014, Powell was still having discomfort around the second MPJ.  Dr. Russell diagnosed osteoarthritis/capsulitis of the second MPJ on the left foot.  (Tr. 772)  On October 30, 2014, Powell met with a new podiatrist for an evaluation.  She complained of chronic pain of the left first MPJ.  (Tr. 820)  The diagnosis was chronic inflammatory response in the left first MPJ and capsulitis of the left second MPJ and flexor tendinosis.  (Tr. 820-821)  Powell received pain injections, dorsal splinting of the second and third toes, and an insole shoe insert.  (Tr. 821)

At a follow up appointment on November 7, 2014, excellent progress was noted.  The pain in Powell's foot had resolved and she declined injections.   (Tr. 821-822)

Between December 2014 and June 2015, Powell continued to treat for foot pain.  She received injections, strapping, in-shoe orthotics and 12 ultrasound treatments to her left foot. (Tr. 1063-1065)

On June 25, 2015, Powell met with James Williams, M.D., complaining of numbness in her right hand.  Neurologic examination revealed normal sensation, cranial nerves, reflexes and coordination.  Dr. Williams diagnosed pharyngeal dysphagia, COPD, insomnia, and tobacco use disorder.  (Tr. 1014)

On July 13, 2015, Powell complained of lower back pain and continued numbness in her right hand.  Physical examination showed no muscle weakness, no numbness and no paresthesias. (Tr. 1017)  Dr. Williams referred Powell to podiatry and prescribed Zanaflex.  (Tr. 1018)

A surgery was scheduled to remove hardware and to correct her prior bunionectomy but Powell called the day before and tried to reschedule it.  Her podiatrist told her he was not going to do the surgery, which upset Powell.  (Tr. 1065-1066)

Neurologist Faizon Hafeez, M.D., noted a positive Tinel's sign in Powell's right wrist on October 6, 2015, but a negative Tinel's sign at a follow-up visit three months later.  (Tr. 1070-1071)

Podiatrist, Neil Saunders, D.P.M., performed a left foot bunionectomy, arthroplasty, and release surgery on January 13, 2016.  (Tr. 1130-1133)  At a post-operative visit on January 29, 2016, Powell rated her pain as 5/10, which was greatly improved.  She had stopped taking Vicodin and was working on range of motion exercises.  Physical examination showed no left foot pain to palpation and improved range of motion.  (Tr. 1184)

On February 12, 2016, Powell said she would wear her surgical shoe when she went outside but was not wearing it inside her house, despite instructions to do so.  (Tr. 1188) Physical examination showed no pain on palpation of the left foot, and her range of motion continued to improve.  However, her second MTP joint pin was broken and the 5th osteotomy was displaced.  (Tr. 1189)

### C.     Relevant Medical Evidence – Mental Impairments

In February 2012, psychiatrist Irfan Ahmed, M.D., diagnosed recurrent severe major depressive disorder without psychotic features, alcohol dependence, and anxiety disorder NOS. (Tr. 421)  Treatment notes show that Powell had nightmares stemming from emotional abuse by her father.  (Tr. 326)

At a visit to Unison Behavioral Healthcare on December 1, 2014, Powell said she had stopped taking her medications after being baptized.  (Tr. 778)  On December 12, 2014, Powell restated that she was not going to take her medications because "the Holy Spirit will help."  (Tr. 971)

On January 6, 2015, Powell reported that she had not taken her medication for the past two months.  However, she had started feeling depressed and began taking them again a week

4

before her appointment.  Powell was sleeping and eating well; she denied suicidal ideation.

Mental status examination showed that she was alert, oriented, cooperative, clean and casually

and neatly dressed.  She displayed normal psychomotor activity, no abnormal movements,

normal speech, a sad mood, full range, congruent affect, intact memory, intact attention and

concentration, linear thought, no delusions, no obsession or compulsion, no hallucinations and

fair insight and judgment.  (Tr. 973)

On February 12, 2015, Powell said she was doing better since she re-started medications

and her nightmares had decreased.  (Tr. 1039)  On March 26, 2015, Powell reported that her

nightmares were no longer intrusive and she was pleased with her progress with self-esteem.

(Tr. 1043)

On July 10, 2015, Powell complained that she was not sleeping.  Her prescription of

Latuda was increased.  (Tr. 986)  However, as of July 28th, Powell had not filled the

prescription.  (Tr. 989)

On August 30, 2015, Powell went to the emergency room complaining of right ear pain.

Her physical exam was benign and the workup was unremarkable.  She was given pain

medication and ear-drops.  At discharge she became verbally aggressive and demanded stronger

pain medication.  She wanted to call 911 for a ride home from the hospital but this request was

denied. (Tr. 1170)  The following morning she cancelled an appointment at Unison because she

had walked home "miles" from the hospital the night before.  She had walked for hours and

stopped to rest at an all-night laundromat; she asked a passerby for a ride because she was

desperate to get home.  (Tr. 995)

On September 23, 2015, Powell reported that her medications were helping and caused

no side effects.  Her depressive symptoms had decreased; her sleep had improved; she denied

mood swings or irritability.  (Tr. 999)

On December 10, 2015, Powell reported that she was not having nightmares anymore. She had recently made gifts for her sons and their families.  She had met a new Scrabble partner. She was grinding her teeth throughout the day – when she was doing dishes, picking up, and baking.  (Tr. 1122)

### D.  Opinion Evidence

#### 1.  Treating Physician – James Williams, M.D.

Dr. Williams completed a medical source statement on November 18, 2015.  (Tr. 1061-1062)  He opined that Powell could stand or walk for 15 minutes at a time and 2 hours in an 8 hour workday and sit for 30 minutes at a time and for 6 hours in an 8 hour workday.  He wrote that she was limited by her lumbar conditions.  He opined that she could lift or carry 5 pounds occasionally and less than 5 pounds frequently.  She could occasionally balance, finger, handle, reach, operate hand controls, operate a motor vehicle, and tolerate heat and cold.  She could never stoop, bend, climb stairs, walk on uneven ground, operate foot controls, or tolerate exposure to dust, smoke, or fumes.  (Tr. 1061)  Dr. Williams opined that Powell needed to elevate her legs and lie down for an hour each 8 hour workday.  He wrote that she had severe pain related to chronic knee[2] and back conditions.  (Tr. 1062)

#### 2.  State Agency Reviewing Physicians

Diane Manos, M.D., reviewed Powell's records on October 28, 2014.  She found no significant changes in Powell's medical condition since the prior ALJ decision of May 19, 2014. She adopted the residual functional capacity ("RFC") from the prior decision.  (Tr. 131-132)

Elizabeth Das, M.D., reviewed Powell's records on January 23, 2015 and agreed with the opinions expressed by Dr. Manos.  (Tr. 144)

---

[2] It is unclear why Dr. Williams wrote that Powell had chronic knee and back problems.  Powell's main problems were with her feet and depression.  (Tr.76-77)  Neither party has cited any medical records related to a chronic knee problem.

### 3.    State Agency Reviewing Psychologists

Janet Souder, M.D., reviewed Powell's records on November 5, 2014.  She found no significant changes in Powell's condition following the ALJ decision of May 19, 2014.  She adopted the residual functional capacity ("RFC") from the prior decision.  (Tr. 132)

Deryck Richardson, Ph.D., reviewed Powell's records on January 31, 2015 and agreed with the opinions expressed by Dr. Souder.  (Tr. 144-145)

### E.    Relevant Testimonial Evidence

Powell testified at the hearing.  (Tr. 70-97)  Powell lived alone.  (Tr. 71)  She previously performed janitorial work, sewing, and was the head of fabrics at Hobby Lobby for a short time. (Tr. 72-76)

Powell felt she was unable to work because of major depression and foot problems.  (Tr. 76)  She had two surgeries to remove her bunion on her left foot.  Her bunions were now removed.  (Tr. 89)  However, she did not wear the special boot after her latest surgery and broke a pin in her left toe.  She needed to schedule another surgery to remove the pin.  She had pain in her foot every day, which she rated as 7/10.  She tried to stay off her foot and to elevate it to reduce swelling.  She was not taking any medication for the pain in her foot.  (Tr. 78)

Powell estimated that she could stand for about 10 minutes at a time.  She was able to walk around her apartment.  She could only sit for about an hour because she got anxious, or bored.  She could only lift and carry five pounds.  (Tr. 80-81)  She was able to take care of herself and cook. (Tr. 86)

Powell's depression made her want to stay in bed.  She only dressed when she needed to leave her house for an appointment.  (Tr. 81-82)  Medication was helping treat depression.  (Tr. 81)  Powell also had trouble sleeping.  (Tr. 83-84)  She did not like to be around people.  (Tr. 84)

Joseph Thompson, a vocational expert, also testified at the hearing.  (Tr. 90-97)  Relevant to Powell's arguments, Mr. Thompson testified that there would be a significant number of jobs that an individual with Powell's residual functional capacity could perform.  (Tr. 93)  Because Powell's arguments do not relate to the VE's testimony, a more thorough summary of the VE's testimony is unnecessary.

## IV.    The ALJ's Decision

The ALJ issued a decision on March 25, 2016 setting forth the following findings relevant to this appeal:

> 2.  Powell had the following severe impairments: major depressive disorder; alcohol dependence; anxiety; post-traumatic stress disorder; chronic obstructive pulmonary disease ("COPD"); lumbar radiculopathy; hallux abductor valgus; status-post left Austin bunionectomy; end digit arthroplasty; sequential release and tailor's bunionectomy; predislocation syndrome metarosphalgeal left; and a bilateral feet hallux deformity.  (Tr. 13)

> 4.  Powell had the residual functional capacity to perform light work. Specifically, she could lift and carry 20 pounds occasionally and 10 pounds frequently.  She could stand, walk, and sit for six out of eight hours.  She could occasionally push and pull, climb, balance, stoop, kneel, crouch, and crawl.  She could have no concentrated exposure to respiratory irritants.  She was limited to simple routine tasks and occasional contact with supervisors, coworkers, and the public.  She was unable to maintain a production rate pace. (Tr. 17)

> 9.  There were jobs existing in significant numbers in the national economy that Powell could perform.  (Tr. 23)

Based on her total findings, the ALJ determined Powell had not been under a disability from August 25, 2014 through the date her application was filed.  (Tr. 24)

## V.    Law & Analysis

### A.    Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.

*See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §§ 405(g) and 1383(c)(3). The findings of the Commissioner may not be reversed just because the record contains substantial evidence to support a different conclusion.  *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."  *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court.  *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court also must determine whether the ALJ decided the case using the correct legal standards.  If not, reversal is required unless the legal error was harmless.  *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant will understand the ALJ's reasoning.

In considering an application for supplemental security income or for disability benefits, the Social Security Administration must follow a five step sequential analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Comm'r of Soc. Sec.,* 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §404.1512(a).

**B.**      **Residual Functional Capacity and *Drummond* Analysis**

Powell argues that the ALJ erred in her application of *Drummond v. Comm'r,* 126 F.3d 837 (6th Cir. 1997) and Acquiescence Ruling 98-4(6) by not considering new and additional evidence of her worsening condition.  Powell also contends that the ALJ applied a heightened standard by requiring her to show "significant" change, a requirement more demanding than warranted under the applicable law.

In *Drummond*, the Sixth Circuit held that prior unappealed decisions of the Commissioner are binding on the claimant and the Commissioner unless new evidence or changed circumstances require a different ruling.  *Drummond*, 126 F.3d at 841.  SSA Ruling 98-4(6), 1998 SSR LEXIS 5 therefore mandates:

> When adjudicating a subsequent disability claim with an adjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the adjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 SSR LEXIS 5, *5, 1998 WL 283902, at *3.

Powell bears the burden to show circumstances changed following the prior ALJ's decision "by presenting new and material evidence of deterioration."  *Drogowski v. Comm'r of Soc. Sec.,* No. 10-12080, 2011 U.S. Dist. LEXIS 115925 at *24-25 (E.D. Mich. July 12, 2011) report and recommendation adopted, 2011 U.S. Dist. LEXIS 110609, (E.D. Mich. Sept 28, 2011).  New evidence is evidence that was "not in existence or available to the claimant at the time of the administrative proceeding that may have changed the outcome of the proceeding." *Coakley v. Comm'r of Soc. Sec.,* No. 2:13-cv-84, 2014 U.S. Dist. LEXIS 37448, at *55 (S.D. Ohio March 21, 2014) (citing *Schmiedebusch v. Comm'r of Soc. Sec*., 536 F. App'x 637, 647 (6th Cir. 2013)).  Evidence is considered material if there is a reasonable probability that the

Commissioner would have reached a different decision if the new evidence had been considered. *Coakley*, 2014 U.S. Dist. LEXIS 37448, at *55 (citing *Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988)).

The ALJ stated that Powell had "generally been stable and had not had any significant changes in her condition" following the earlier decision.  (Tr. 17)  Powell makes much of the ALJ's use of the word "significant."  But the ALJ cited the proper law – *Drummond* – and her finding that Powell had no significant changes in her condition did not equate to applying a heightened standard.  Furthermore, as pointed out by the Commissioner, other cases applying *Drummond* have also used the word significant without committing error.  *See Schmiedebusch v. Comm'r of Soc. Sec.,* 536 F. App'x 637, 644, 650 (6th Cir. 2013); *Cooper v. Colvin,* No. 1:14cv2593, 2016 WL 828784, at *7 (N.D. Ohio Mar. 3, 2016).  Even *Drummond* used this word, finding that substantial evidence was not introduced that Drummond's condition improved *significantly* between the two hearing dates.  *Drummond,* 126 F.3d at 843.  Powell's argument that the ALJ applied an incorrect legal standard by noting no significant change had occurred is not well taken.

Powell also argues that she presented new and additional evidence regarding her ongoing foot problems, her new diagnoses of lumbar radiculopathy and chronic obstructive pulmonary disease ("COPD"), a change in her mental condition with the new diagnoses of PTSD, and symptoms of carpal tunnel syndrome.  ECF Doc. 15 at Page ID# 1267-1269.   She contends that the ALJ's recognition of new severe impairments reflects her production of new and material evidence.

The ALJ's decision addressed several of these alleged impairments and explained her finding that the evidence did not support a more restricted RFC than the one assigned by the previous ALJ's decision in 2014.   For example, ALJ Budney found that Powell had the severe

impairment of lumbar radiculopathy, a finding that the prior ALJ did not make.  However, there was no medical evidence in the record showing that Powell's back problems limited her ability to work.  And, when the ALJ asked Powell at the administrative hearing if she was having any issues with her back, she responded, "no."  (Tr. 89)  The undersigned agrees with the ALJ that there was no evidence that Powell's back problem was causing any significant changes in her condition.  Although Powell's new medical evidence supported a finding of lumbar radiculopathy as a severe impairment, the record did not support a finding that her back problem limited her ability to work.  Powell denied any limitations caused by this impairment and the ALJ properly assigned less than controlling weight to the opinion of the treating physician who diagnosed this problem.[3]  The limited evidence of Powell's back problem considered by the ALJ did mandate a different decision.  The ALJ did not err in finding that Powell's back problem did not warrant a change to the previous ALJ's RFC determination.

The ALJ also addressed Powell's continued problems with her feet.  (Tr. 20-21)  Powell cites numerous treatments that she received since the prior ALJ decision, including another surgery to correct a previous bunionectomy.  ECF Doc. 15 at Page ID# 1268.  However, these treatments were only a continuation of problems and treatments she had been receiving when the prior decision was issued in 2014.  In 2014, the prior ALJ found that Powell had a severe impairment of bilateral feet hallux deformity.  (Tr. 104)  She discussed Powell's medical history, which included a bunionectomy to Powell's right foot followed by medication and recovery.  Powell experienced some swelling for some time after the surgery.  Then in May 2013, Powell went to the emergency room with left foot swelling.  She was diagnosed with a fracture and

---

[3] A more thorough discussion of Powell's treating source, Dr. Williams, follows.  Powell argues that Dr. Williams' opinion represents new evidence regarding her worsening condition.  However, the ALJ properly assigned less than controlling weight to Dr. Williams' opinion.

ultimately underwent a left bunionectomy in January 2014.  The prior ALJ found that Powell was limited to less than light work based on her ongoing foot pain.  (Tr. 104-105)

ALJ Budney found that there was no significant change in Powell's condition that would warrant a change from the 2014 decision.  (Tr. 17)  She noted that Powell was able to walk home from the emergency room in August 2015.  The ALJ also noted that Powell had not been compliant with her treatment instructions after the second bunionectomy to her left foot.  She did not wear her surgical shoe as instructed following the surgery.  (Tr. 22)  As a result of this noncompliance, Powell broke a pin in her foot that needed to be surgically removed.  (Tr. 18, 77)

The Commissioner aptly notes that this case resembles *Blankenship v. Comm'r of Soc. Sec.,* 624 Fed. Appx. 419 (6th Cir. 2015).  Like Powell, Blankenship had problems with her feet and underwent numerous surgeries.  Between the first and second ALJ decision, Blankenship had five additional surgical procedures on her left foot.  Nevertheless, the Sixth Circuit held that she had failed to show how these five additional surgeries resulted in a "qualitative, material change to her condition."  *Blankenship,* 624 Fed. Appx. at 426-427.  The ALJ in *Blankenship* relied on medical records showing that Blankenship could walk despite the treatments she was undergoing.  Here, the ALJ also looked to medical records showing that Powell had walked "for hours."  The ALJ did not err in finding that Powell's continued problems with her feet did not warrant a change to the previous ALJ's RFC determination, which already included limitations based on Powell's problems with her feet.

The ALJ also considered Powell's COPD impairment.  (Tr. 19-20)  The ALJ recognized that Powell was diagnosed with COPD and started on an inhaler in September 2014.  (Tr. 19)  However, imaging studies four months later showed no acute cardiopulmonary disease.  (Tr. 19, 508)  The ALJ noted that Powell continued to smoke.  (Tr. 22)  Moreover, the prior ALJ already included a limitation to no concentrated exposure to respiratory irritants in Powell's RFC.  (Tr.

14

109)  Powell doesn't cite any evidence in the record suggesting that she had greater functional limitations because of her COPD.  It does not appear that any additional limitation was warranted and the ALJ did not err in adopting the prior ALJ's RFC determination.

Powell argues that she began to experience symptoms of carpal tunnel syndrome in 2015. ECF Doc. 15 at Page ID# 1269.  In June, she reported numbness in her right hand, though her examination was normal.  (Tr. 1012-1014)  In October, Dr. Hafeez noted that she had a positive Tinel's sign in her right wrist.  (Tr. 1070)  Despite these medical notes, there is no indication in the record that Powell's carpal tunnel symptoms had caused any material change to her condition.  In fact, at a follow-up appointment in January 2016, Powell did not report any carpal tunnel symptoms and she was negative for Tinel's sign.  (Tr. 1071)  Powell's symptoms of carpal tunnel syndrome did not warrant any additional RFC limitations.

Finally, Powell contends that her mental health problems worsened after the prior ALJ decision.  ECF Doc. 15 at Page ID# 1269.  The 2014 ALJ decision found that Powell had severe impairments of major depressive disorder and anxiety disorder.  (Tr. 104)  ALJ Budney found these impairments to be severe and also included post-traumatic stress disorder ("PTSD") as a severe impairment.  (Tr. 13)  The medical records supported this finding.  However, Powell has not shown that her mental impairments, including the new diagnosis of PTSD, caused a material change in her condition.  She argues that she began to suffer nightmares from earlier-life emotional abuse by her father, but she admits that the nightmares began to improve and that her symptoms from mental impairments improved with medication.  ECF Doc. 51at Page ID# 1269.

The ALJ noted Powell had stopped taking her medications and that, even without medications, she denied hallucinations or suicidal thoughts or plans.  Powell also stated that her medications were helping and that she reported a decrease in depressive symptoms in September 2015.  She denied mood swings or irritability.  Despite stating that she isolated herself from other

people, Powell dated someone for a month in February 2015.  (Tr. 22)  Substantial evidence supported the ALJ's conclusion that Powell's mental impairments had not caused any significant changes in her condition.  Although Powell's new medical evidence supported finding PTSD to be a severe impairment, the record did not support a finding that her mental impairments caused any additional limitations in her ability to work than had been found in the first ALJ decision.  The ALJ did not err in adopting the prior ALJ's RFC determination.

The undersigned finds the ALJ's determination of Powell's residual functional capacity was supported by substantial medical and non-medical evidence.  Powell's well written brief correctly points out that she presented new evidence, but she has not presented material evidence showing that any of her impairments caused functional restrictions greater than those recognized in the prior ALJ decision.  Consequently, the ALJ did not err in adopting the prior ALJ's RFC finding.  In fact, her decision was consistent with the holding of *Drummond* and SSA Ruling 98-4(6).  The undersigned recommends that the court affirm the ALJ's residual functional capacity finding.

### C.     Treating Physician Rule[4]

Powell also argues that the ALJ erred in assigning little weight to her treating physician, Dr. Williams, and in failing to state good reasons for the weight she assigned.  The administrative regulations implementing the Social Security Act impose standards for weighing medical source evidence.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).  In making disability determinations, an ALJ must evaluate the opinions of medical sources in accordance with the nature of the work performed by the source.  *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 375 (6th Cir. 2013).  The treating physician rule requires that "[a]n ALJ [] give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically

---

[4] 20 CFR §§ 416.927 applies to Powell's claim because it was filed before March 27, 2017.

acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted).

Even if the ALJ does not give the opinion controlling weight, the treating source opinion is still entitled to significant deference or weight that takes into account the length of the treatment and frequency of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the treating physician is a specialist.  20 C.F.R. § 416.927(c)(2)-(6).  The ALJ is not required to explain how he considered each of these factors but must provide "good reasons" for discounting a treating physician's opinion.  20 C.F.R. § 416.927(c)(2); see also *Cole*, 661 F.3d at 938.  ("In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned.")

The ALJ's "good reasons" must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  As the Sixth Circuit has noted,

> [t]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors.  Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.  Such a rule would turn on its head the regulation's presumption of giving greater weight to the treating sources because the weight of such sources would hinge on their consistency with nontreating, nonexamining sources.

*Id.* at 377.

A failure to follow these procedural requirements "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Rogers v. Comm'r*

17

*of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007). The Sixth Circuit Court of Appeals "do[es] not

hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given

to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions

from ALJs that do not comprehensively set forth reasons for the weight assigned." *Cole,* 661

F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)) (alteration in original)

(internal quotation marks omitted).

 Regarding Dr. Williams' opinion of Powell's physical capacity, the ALJ stated:

> Turning to the opinion evidence, in a medical source statement, completed in
> November 2015, James Williams, D.O., opined that the claimant could
> occasionally lift or carry five pounds frequently lift or carry less than five pounds,
> never stoop, bend, climb stairs or steps, or operate foot controls, walk for two
> hours in an eight-hour day, must elevate her legs one hour a day, must lie down
> one hour a day, and has severe pain. (Exhibit C23F). The undersigned has given
> Dr. Williams' opinion partial weight, finding that the claimant is able to do more
> than Dr. Williams opined. For example, in August 2015, the claimant reported
> that she was able to walk home from St. Anne's which is miles away. She
> reported that she walked for hours. (Exhibit C20F at 28). The physical
> examination in August 2015, at Mercy St. Anne Hospital, was "benign." (Exhibit
> C36F at 5-6). Furthermore, a CT scan in January 2015, at St. Vincent Mercy
> Memorial Hospital showed no acute cardiopulmonary disease. (Exhibit C16F at
> 26). In January 2015, the claimant noted that her pain was "greatly improved"
> and she stopped taking Vicodin. (Exhibit C37F at 5). Given the discrepancy
> between Dr. Williams' opinion and the objective evidence, it appears that Dr.
> Williams' expressed an opinion in an effort to assist a patient with whom he
> sympathizes for one reason or another. Another reality which should be
> mentioned is that patients can be quite insistent and demanding in seeking
> supportive notes or reports from their physicians, who might provide such a note
> in order to satisfy their patients' requests and avoid unnecessary doctor/patient
> tension. While it is difficult to confirm the presence of such motives, they are
> more likely in situations where the opinion in question departs substantially from
> the rest of the evidence of record, as in the current case. The doctor apparently
> relied quite heavily on the subjective report of symptoms and limitations provided
> by the claimant, and seemed to uncritically accept as true most, if not all, of what
> the claimant reported. Yet, as explained elsewhere in this decision, there exists
> objective evidence, and good reasons for questioning the reliability of the
> claimant's subjective complaints. The claimant lives alone and has not reported
> any particular help in maintaining the residence. The claimant also noted that she
> is able to do dishes, "pick up" her residence, and bake. (Exhibit C33F at 9).
> These activities require stooping, bending, and lifting or carrying more than five
> pounds. This accordingly renders Dr. Williams' opinion less persuasive, and it
> has been given partial weight.

(Tr. 21)

The ALJ's reasons for assigning partial weight to the opinion of Dr. Williams were that the record showed that Powell was able to do more than opined by Dr. Williams; the discrepancy between the record and his opinion; and he relied heavily on Powell's subjective report of symptoms.  (Tr. 21)

After making these findings, the ALJ was then required to point to "evidence in the case record, *** sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9, *12, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).  And she did.  The ALJ cited records from St. Anne's in August 2015 showing that Powell's physical examination was benign and that she had walked for hours to get home.  She cited records from January 2016 stating that Powell was greatly improved and had stopped taking Vicodin.  The ALJ also noted that Dr. Williams seemed to uncritically accept most of Powell's subjective complaints.  The ALJ then contrasted Dr. Williams' opinion with Powell's reported daily activities.  Powell lived alone and didn't require any assistance in maintaining her residence; she was able to do dishes, pick up, and bake.

Powell contends that the ALJ relied on one isolated record (about walking for miles) to support her decision to assign little weight to Dr. Williams' opinion.  This contention does not accurately characterize the ALJ's evaluation.  The ALJ did cite the record documenting Powell's emergency room visit to St. Anne's.  She noted that the physical examination was benign and that Powell walked home.  She did not cite this record improperly; it was part of the record.  She was not required to discount this record because Powell now argues that it was not an accurate depiction of her abilities.  And this was not the only record that the ALJ cited.  The ALJ also cited a later record indicating that Powell was much improved and was not taking pain

medication.  The substantial evidence standard presupposes a "zone of choice," within which the ALJ may decide without interference from the courts.  *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830, 833 (6th Cir. 2006).  Even if a reviewing court would resolve the factual issues differently, when supported by substantial evidence, the Commissioner's decision must stand.  See *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001).  The ALJ did not err by failing to provide good reasons; she cited specific evidence in the record supporting her assignment of partial weight to Dr. Williams' opinion.

Powell also argues that the ALJ erred in suggesting that Dr. Williams provided his opinion in an effort to assist Powell out of sympathy.  The undersigned partly agrees.  This section of the ALJ's decision adds little support to her assignment of partial weight to Dr. Williams' opinion.  The ALJ does not point to any specific records justifying this conjecture on her part.  If this were the ALJ's only reason for assigning partial weight, the undersigned would likely agree with Powell and recommend remand.  However, the ALJ provided other good reasons and did not err in assigning partial weight.

The ALJ also found that Dr. Williams' opinion was based on subjective reports.  A review of Dr. Williams' treatment notes supports this finding.  Dr. Williams first met with Powell in June 2015.  ECF Doc. 15 at Page ID# 1260; (Tr. 1012).  In July 2015, Powell told Dr. Williams that she had lower back pain and that she was having continued numbness in her right hand again. (Tr. 1017)  Dr. Williams' physical examination showed no muscle weakness, no numbness or paresthesias. (Tr. 1018)  The treatment notes do not indicate that Dr. Williams ordered or reviewed any x-rays or other diagnostic tests.  Yet, he diagnosed lumbar dysfunction, degenerative disc disease, and lumbar radiculopathy, chronic. (Tr. 1018-1019)  It appears that these diagnoses were based only on Powell's subjective reports.  Undoubtedly, it would have been better had the ALJ provided a detailed explanation for her finding that Dr. Williams'

opinion was based on subjective reports. Nevertheless, substantial evidence supports this finding because it appears that Dr. Williams did indeed base his opinion on Powell's subjective reports.

The ALJ assigned partial weight to Dr. Williams' opinion because his opinion was not well-supported and was inconsistent with substantial evidence in the case record. The ALJ's decision was within a "zone of choice," finding support in the record. She provided good reasons for assigning less than controlling weight to Dr. Williams' opinion. She recognized that his opinion was based on subjective reports and was inconsistent with Powell's abilities as described by both Powell and by other medical records. Because the ALJ did not err in assigning less than controlling weight to the opinion of Dr. Williams, I recommend that the ALJ's decision be affirmed.

## VI.    Recommendation

The ALJ's decision is supported by substantial evidence, and Powell has failed to identify any error of law in the proceedings at the administrative level. I recommend that the final decision of the Commissioner be **AFFIRMED,** pursuant to 42 U.S.C. § 405(g).

Dated: August 6, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters,* 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).